IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TERENCE M. MULLANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV967 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Terence M. Mullaney, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying his claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB on July 10, 2006, alleging a disability onset date of May 5, 2006. (Tr. 119-123.) Plaintiff then filed an application for SSI on March 19, 2007, alleging a disability onset date of May 6, 2006. (*Id.* at 103.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 50-65.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 33.) Present at the March 19, 2009 hearing were Plaintiff, his attorney, and a Vocational Expert ("VE"). (*Id.* at 300.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 12-20.) On March 30, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 2-4.)

# II. FACTUAL BACKGROUND

Plaintiff was forty-eight years old on the alleged disability onset date, had at least a high school education, and was able to communicate in English. (*Id.* at 18.)

# III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v.*

---

[2] Transcript citations refer to the administrative record. Additionally, the alleged onset dates are at variance, however, since this variance is immaterial to the outcome of this case, the May 6, 2006 onset date as specified in the ALJ's decision is used herein.

*Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

# IV. THE ALJ'S DISCUSSION

The Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(3)     Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4)     Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5)     Whether the claimant is able to perform any other work considering both his residual functional capacity[5] and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fifth step of the sequence, at which point he determined that Plaintiff was not disabled from May 6, 2006 through the date of the decision. (Tr. at 18-20.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since his alleged onset date of May 6, 2006. (*Id.* at 14.) The ALJ next found in step two that Plaintiff's degenerative disc disease was a severe impairment (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 15.) At step four, the ALJ concluded that Plaintiff could no longer perform his past relevant work. (*Id.* at 18.) At step

---

[5]  "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs existing in the national economy that he could perform. (*Id.* at 18-19.)

## B.  Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 15-18.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform light work with additional limitations. Specifically, Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently and stand, walk, and sit for six hours in an eight hour day with a sit/stand option for no longer than sixty minutes at one time; no more than frequent postural activities, and no exposure to hazards such as moving machinery or heights. (*Id.* at 15.)

## C.  Past Relevant Work

The ALJ found that Plaintiff could not perform his past relevant work. (*Id.* at 18.)

## D.  Adjustment to Other Work

The claimant bears the initial burden of proving a disability. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). If the claimant establishes at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education, and past work experience.

*Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff was forty-eight years old on his alleged disability onset date which is defined as a "younger individual age 18-49," but that Plaintiff subsequently changed age category to closely approaching advanced age, with at least a high school education, and the ability to communicate in English. (Tr. 18.) The ALJ noted that transferability of job skills was not material because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) The ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was not disabled from May 6, 2006, the alleged onset date, through the date of decision. (*Id.* at 18-19.)

## V. ANALYSIS

Plaintiff raises two issues. First, Plaintiff argues that the ALJ failed to properly evaluate his credibility. (Docket Entries 11 at 5-16 and 15 at 1-10.) Second, he contends the ALJ failed to properly evaluate his RFC. (Docket Entry 11 at 16-17.) As explained below, these arguments lack merit.

### A. The ALJ's Credibility Determination Is Supported by Substantial Evidence.

First, Plaintiff claims that the ALJ committed reversible error in his credibility analysis. (Docket Entries 11 at 5-16 and 15 at 1-10.) The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments

could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby*, 2010 WL 5553677, at *3 (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.*

Similarly, in determining the credibility of a claimant, SSR 96–7p, *Assessing the Credibility of an Individual's Statements*, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96-7p, 1996 WL 374186, at *4. An ALJ's credibility determination is also entitled to "substantial deference." *Sayre v. Chater*, NO. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished).

Here, the ALJ found that "the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms," thus, the ALJ performed the first step of the *Craig* analysis. (Tr. 16.) Next, the ALJ performed step two of the analysis, concluding that Plaintiff's "statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*) Thus, the ALJ neither totally accepted, nor totally rejected, Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms. *See* SSR 96-7p, 1996 WL 374186, at *4 ("In making [a credibility determination], the adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence . . . , the adjudicator may find all, only some, or none of an individual's allegations to be credible.")

**1. The ALJ's Conclusion That Plaintiff's Allegations of Disabling Pain Were Inconsistent With Both the Objective Medical Record and With Reports To His Medical Providers Is Supported by Substantial Evidence.**

In declining to adopt in their entirety Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, the ALJ first noted that (1) Plaintiff's complaints of disabling pain were inconsistent with the objective medical record and (2) that Plaintiff often failed to report to his doctors that he suffered from significant restrictions and from significant pain. Specifically, the ALJ found that:

> [f]ollowing a thorough review of the evidence of record, the undersigned finds that the claimant's reports to his treating and examining physicians, as well as findings upon objective examination, are inconsistent with such significant restrictions and complaints of pain and that the claimant either did not complain of such significant restrictions and/or pain or failed to mention them altogether. Of note, despite the claimant's allegations at his hearing and to the Social Security Administration, the claimant apparently failed to complain of such significant limitations in standing, sitting, lifting, carrying, and moving about to his treating physicians. Despite his complaints, the claimant was able to undress himself at the emergency room and moved about well. Exhibit 1F/37. While the claimant was observed on occasion to use his cane, he was

9

found to have a normal gait with the use of an assistive device and his cane was not apparently medically prescribed. Moreover, treatment notes indicate that with the use of Elavil, the claimant reported improved sleep. Exhibit 1F/66. A review of the medical evidence of record fails to indicate that the claimant complained of such significant medication side effects. Indeed, despite his assertions regarding his pain, a review of the medical evidence indicates that the claimant reported generally moderate pain, improved with the use of medication and treatment. See also Exhibit 1F/39 and 60, Exhibit 2F/10. The claimant routinely denied any weakness.

(Tr. 16.; *see also* 18 "[T]reatment notes indicate that the claimant generally complained of only moderate back pain with some exacerbations.")

At his hearing, Plaintiff testified that all activities, including walking, sitting, standing, climbing stairs, and riding in a car worsened his pain, that he could sit only for an hour and stand for a maximum of an hour and a half, that he was unable to lift any weight at all on a bad day, and only up to twenty pounds on a good day. (Tr. 307-12.) Plaintiff also testified that he had to take about six thirty minute breaks a day in order to lie down to relieve his pain. (*Id.* at 308-09.) Plaintiff places considerable emphasis on the last restriction, contending that the ALJ erred in discrediting his need to lie down frequently, and asserting that this led to reversible error at step five. (Docket Entry 11 at 17.) Plaintiff also testified that one medication he took, amitriptyline, caused side effects in the form of "a hangover." (Tr. 309 "The amitriptyline gives me a hangover. It makes me, it makes me drowsy. It make, as, it give me a hangover. I can't explain it any other way.")

It is well established that an ALJ may properly consider the fact that a claimant never

reported or rarely reported certain symptoms or limitations to his or her treating sources.[6]

Here, therefore, the ALJ could, and did, properly consider Plaintiff's failure to complain to his medical providers of significant restrictions or limitations in his ability to sit, stand, walk, climb stairs, etc., greater than those set forth in his RFC and/or to complain of significant side effects from his medications. (Tr. 16, 226, 231, 269, 278, 280, 286, 290.) The medical record is void, for example, of any statement by Plaintiff that he needed to lie down frequently during the day, much less for three hours each day. Additionally, there is little in the medical record demonstrating that Plaintiff complained of significant restrictions due to the other abovementioned activities. It is true that the medical records indicate that Plaintiff sometimes complained to his doctors that he could not lift at all (*id.* at 240), sometimes indicated that he could lift up to ten pounds without difficulty (*id.* at 290), and sometimes

---

[6] *See, e.g., Flowers v. Apfel*, No. 98-2112, 1999 WL 150491, at *2 (4th Cir. 1999) (unpublished) (finding that a claimant's alleged limitations were not supported by the record when they were never reported to his treating physician); *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) ("Connett asserted she spent 75 percent of her day lying down due to severe pain, the ALJ's decision rejected her testimony in part because she never reported this restriction to a physician."); *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("Edwards complained at the hearing of headaches, but the medical records contain few references to headache complaints; where the medical records do mention headache complaints, she was diagnosed with hypertension, and she responded well to the appropriate medication."); *Teal v. Colvin*, No. 1:11CV191 SNLJ/FRB, 2013 WL 1363727, *15 (E.D. Mo. March 18 2013) ("The undersigned notes that plaintiff testified that he spent the majority of his time sitting in a reclined position. However, there is no objective medical evidence substantiating plaintiff's need to do so. Further, the record shows that plaintiff never reported to any of his doctors that he needed to sit in a reclined position for sustained periods of time."); *Heard v. Astrue*, No. 2:11–CV–00208–BD, 2012 WL 5036364 (E.D. Ark. Oct. 17, 2012) (noting that "infrequent complaints of chest pain and shortness of breath" were one of a number of "good reasons" for discrediting claimant's assertions); *Wilkerson v. Astrue*, No. 7:10–CV–77–D, 2011 WL 3951165, at *5, 11 (E.D.N.C. Aug. 19, 2011) ("[T]he ALJ noted Claimant's testimony that she could not stand for more than 30 minutes, had to rest after walking only 10–20 minutes, had to lie down 2–3 times daily for 30 minutes, and needed both hands to lift a gallon of milk—but that the record did not reflect that she had reported any of those restrictions to her physicians or that any physician had independently observed what should have been readily apparent 'chronic severe functional limitations.'").

made no complaints regarding lifting at all (*id.* at 210, 283). As noted, however, it is the ALJ's task to resolve conflicts in the evidence. After considering the entire record, discussed in greater detail below, the ALJ ultimately limited Plaintiff to light work involving the frequent lifting of no more than ten pounds, and the occasional lifting of twenty.

Plaintiff also testified that he had pain "all the time" which, among other things, gave rise to "trouble sleeping." (Tr. 307-08.) In declining to fully credit Plaintiff's allegations of disabling pain, the ALJ relied in part on a treatment note indicating that "with the use of Elavil, the claimant reported improved sleep." (Tr. 16, 237.) Plaintiff contends that there is no inconsistency here because the fact that Elavil improved his sleep does not mean his pain disappeared. (Docket Entry 11 at 13.) The record does indeed support the notion that despite taking Elavil Plaintiff still had pain during the day. (Tr. 240.) However, a treatment note indicating that Plaintiff's sleep problems were "much improved" (*id.* at 237) strikes the undersigned as entirely relevant to the question of whether to fully credit his assertion that he suffered from pain "all the time" and whether that pain was disabling. Plaintiff also faults the ALJ for noting in his credibility analysis that "the claimant was able to undress himself at the emergency room." (*Id.* at 11 at 12.) Yet, that Plaintiff could undress himself also strikes the undersigned as relevant as to whether Plaintiff suffered from disabling pain. While these particular findings of the ALJ may not be dispositive on the issue of Plaintiff's credibility, they relate to and bolster the ALJ's overall credibility analysis. In sum, the ALJ's decision to diminish Plaintiff's credibility based partially on his own self-reporting (or lack thereof) to medical providers is well supported.

In deciding to not fully credit all of Plaintiff's testimony, the ALJ also relied upon the medical opinions of Plaintiff's treating physicians, evaluating physicians, and the State agency non-examining medical consultants. (Tr. 17.) For example, the ALJ noted that Dr. Eby, a treating orthopedist, reported that for eight months (August 2006 through March 2007) Plaintiff was temporarily disabled. (*Id.*) Yet, in March 2007, Dr. Eby also recommended that Plaintiff return to work. (*Id.* at 17, 244.) The ALJ concluded that Dr. Eby's conclusion that Plaintiff was even temporarily disabled was entitled to "limited weight" as it was not supported by the record, but gave "significant weight" to Dr. Eby's conclusion that Plaintiff could return to work as it was "generally well supported by the weight of the evidence of record." (*Id.* at 17.) The ALJ further grounded his RFC assessment in the opinions of the State agency nonexamining consultants, who concluded that Plaintiff was not disabled and was capable of a limited range of medium exertional work, which was inclusive of exertionally light work. (*Id.* referencing Tr. 176, 182-203.) Plaintiff has not contested the ALJ's weighing of Dr. Eby or the State agency consultants. The record is also barren of a relevant opinion that Plaintiff is permanently disabled or restrictions more significant than those set forth in the RFC. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"). In short, substantial evidence supports the ALJ's conclusion that overall the medical findings in the record upon objective examination are inconsistent with Plaintiff's alleged restrictions beyond those set forth in his RFC.

## 2. The ALJ's Conclusion That Plaintiff Only Complained of Moderate Pain With Some Exacerbations Is Supported by Substantial Evidence.

Likewise, although Plaintiff contests this finding (Docket Entry 11 at 13-14), it was also proper for the ALJ to consider Plaintiff's reports to his medical providers of generally moderate pain and find this as contradicting an allegation of disabling pain. (Tr. 16.) As Defendant correctly points out, in May 8, 2006, two days after the alleged onset date, Plaintiff reported his back pain as "moderate." (Tr. 258.) It escalated to an eight out of ten from May through August 2006. (*Id.* at 219, 221, 262.) Yet, Plaintiff reported that prescribed medication, the application of a TENS unit, and physical therapy all helped his pain. (*Id.* at 224, 228, 229-30, 231, 234, 237, 288.) As of October 24, 2006, Plaintiff reported his pain was constant at a five out of ten. (*Id.* at 229.) On December 1, 2006, Plaintiff rated his pain at a five or six out of ten. (*Id.* at 237.) In January 2007, he reported an "acute flare" of pain, which he still rated at only a six out of ten. (*Id.* at 240.) Then, in February 6, 2007, Plaintiff rated his pain as both being a ten and also "moderate." (*Id.* at 208, 210.) By September 19, 2007, his pain had dropped again to a six out of ten. (*Id.* at 294.) The undersigned agrees with Defendant's contention that at no point through the ALJ's April 2009 decision did Plaintiff report an extended period of more than moderate pain to his medical providers. *See* 42 U.S.C. § 423(d)(1)(A) (disability includes minimum twelve-month durational requirement). Consequently, substantial evidence supports the ALJ's conclusion that Plaintiff's pain was only moderate "with some exacerbations" and that

he responded positively to prescribed treatment measures. (Tr. 16, 18.)[7]

### 3. The ALJ's Conclusion That Plaintiff's Activities of Daily Living Were Inconsistent with Disabling Pain Is Supported by Substantial Evidence.

The ALJ also considered Plaintiff's activities of daily functioning, which were:

> inconsistent with his allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above. At the hearing, the claimant testified that he could do laundry occasionally, shop for groceries with a cart, and drive short distances. In April 2008, the claimant reported that he helped to clean out a garage.

(Tr. 16.) Substantial evidence supports this conclusion. Plaintiff testified that he was able to do laundry "sometimes," grocery shop with a cart (though he usually had someone accompany him), and drive short distances. (Tr. 310-12.) He also reported he could keep his house clean, do laundry, dishes, some cooking, physical therapy, and, on one occasion, clean a garage. (*Id.* at 202, 283.) These activities are inconsistent with disabling pain.

Plaintiff faults the ALJ for failing to explain how these activities are consistent with his RFC finding and transferable to a work setting. (Docket Entries 11 at 14 and 15 at 4-5.)

---

[7] The ALJ also concluded that Plaintiff's use of a cane was relevant to his credibility analysis because he used it without a prescription. (Tr. 16.) The regulations require the ALJ to consider "any measures you use or have used to relieve your pain or other symptoms" in assessing credibility. 20 C.F.R. §§ 404.1529(c)(3)(vi); 416.929(c)(3)(vi). The undersigned agrees with Defendant (Docket Entry 14 at 13-14) that the failure of any medical source to prescribe the use of a cane could undermine Plaintiff's need to use one to relieve pain when walking. Also, Plaintiff's doctors regularly reported that he had a normal gait, though they only sometimes noted that he made use of a cane. (*See, e.g.*, Tr. 226, 237, 244, 288.) In any event, even assuming the ALJ erred in considering Plaintiff's use of a cane without a prescription, any error here would ultimately be harmless, give the other well-supported findings in Plaintiff's credibility analysis discussed herein. Finally, despite Plaintiff's contention to the contrary, *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) is not applicable here, because in *Paker* an occupational therapist encouraged the plaintiff to use a cane. (Docket Entry 11 at 12-13.) No such comparable fact exists in this record.

Yet, our case law supports the conclusion that the activities mentioned are relevant to, and supportive of, the ALJ's credibility and RFC analysis.[8] Plaintiff also points to a statement by a health care provider that he is "unable to perform functional activities" and a statement by another provider that he was unable to lift due to thoracic pain (Tr. at 229, 237), as well as his hearing testimony that on bad days he cannot lift (*id.* at 308). Plaintiff contends that the ALJ erred by failing to address this evidence in his decision. (Docket Entry 15 at 5.)

The undersigned does not find this argument persuasive. First, it is well established that an ALJ need not provide a written evaluation for each document in the record.[9] Second, the ALJ repeatedly indicated in his decision that he considered the entire record (Tr. 14, 15, 16, and 18) and, absent a reason to believe otherwise, the Court is entitled to rely on these representations. *See Grubby*, 2010 WL 5553677, *6 *citing Rappaport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991) (concluding that because the ALJ stated that he considered the entire record in making his decision, the court could reject the claim that the claimant's wife's testimony was not considered). Third, while Dr. Eby's December 1, 2006 treatment note states that Plaintiff "complains of weakness in his upper extremities . . . due to inability

---

[8] *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding that routine activities—attending church, visiting relatives, reading, watching T.V., cooking, cleaning the house, doing laundry and performing stretches recommended by chiropractor—were inconsistent with complaints of pain); *Jones v. Astrue*, No. 1:09cv430, 2011 WL 815610, *4 (W.D.N.C. Feb. 1, 2011) (affirming ALJ's credibility analysis, in part where "plaintiff acknowledged that she could care for her own personal needs and perform light household chores [which] further contradict[ed] her allegations of disabling pain") *adopted in* 2011 WL 815388 (W.D.N.C. Feb 28, 2011).

[9] *See Brittain v. Sullivan*, No. 91-1132, 1992 WL 44817, *6 (4th Cir. March 11, 1992) (unpublished); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *see also N.L.R.B. v. Beverly Enterprises-Massachusetts*, 174 F.3d 13, 26 (1st Cir. 1999); *Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31 2009) (unpublished); *Brewer v. Astrue*, No. 7:07–CV–24–FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct 21, 2008) (unpublished).

to lift because of the thoracic pain," that same treatment notes indicates that Dr. Eby expected Plaintiff to return to light duty work (Tr. 237) and in March 2007, Dr. Eby also recommended that Plaintiff return to work. (*Id.* at 17, 244.) As noted, an October 24, 2006 treatment note from a physical therapist does indicate that on one particular day Plaintiff was "unable to perform functional activities due to pain," yet as explained throughout this Recommendation, the overall record supports the ALJ's credibility and RFC determinations.

### 4. Any Error in the ALJ's Noncompliance Finding Was Harmless.

The ALJ also found that Plaintiff did not consistently follow prescribed treatment and medication regimens and that this detracted from his credibility:

> [T]he undersigned notes that the claimant has been noncompliant with his treatment and medication regimen. While the claimant has complained that he was unable to afford medical treatment due to his lack of health insurance and financial limitations, there is no evidence to indicate that the claimant ever attempted to avail himself of low cost to no cost medical treatment available within his surrounding community. Moreover, the evidence of record indicates that the claimant has been able to continue his pack a day smoking habit despite the negative medical consequences of such and associated cost. Treatment notes further indicate that the claimant missed scheduled medical appointments and ran out of his medications, which further reduces his credibility. See Exhibit 1F/53, 60, 68, Exhibit 2F, and Exhibit 2F/3 and 13. A[ ] urine screening was positive for marijuana in September 2006, the claimant was denied narcotic pain medication by his treating orthopedist, Dr. James Eby. Exhibit 1F/53.

(Tr. 17.) Plaintiff raises a potentially meritorious argument regarding this issue, at least in part. However, as explained below, any error in this part of the ALJ's credibility analysis is

ultimately harmless.[10]

A claimant's failure to obtain medical treatment that he cannot afford cannot justify an inference that his condition was not as severe as he alleges. *Mickles v. Shalala*, 29 F.3d 918, 929-30 (4th Cir. 1994) (citing *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986)); S.S.R. 96-7p, 1996 WL 374186, at *8 (stating that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other [relevant] information in the case record"). A claimant must demonstrate his inability to afford treatment with credible evidence, *Hawley v. Colvin*, No. 5:12–CV–260–FL, 2013 WL 6184954, at *6 (E.D.N.C. Nov. 25, 2013), and the Agency must establish unjustified noncompliance. *Dickens v. Astrue*, No. 5:10–CV–535–BO, 2011 WL 3269422, at *16 (E.D.N.C. July 28, 2011) (citing *Preston v. Heckler*, 769 F.2d 988 (4th Cir. 1985)).

Here, the ALJ concluded that there is no evidence to indicate that Plaintiff ever attempted to avail himself of low cost to no cost medical treatment in his surrounding

---

[10] Although the undersigned, assumes without deciding that the ALJ erred in this portion of his credibility analysis, it should be noted that the noncompliance finding is not without some support in the record. For example, Plaintiff does not contest the ALJ's findings that Plaintiff was denied narcotic pain medication after testing positive for THC. (*Id.* at 224, 9/18/06 "The only thing that has been helping is Lortab, which he states he is now out of. . . . Urine drug screen was positive for THC. I informed patient that I would not be able to prescribe him any narcotic medication. The Lortab was not dispensed at this visit and I will not prescribe him any narcotics in the future.") Thus, in this instance, Plaintiff's drug use narrowed his medication options. *See, e.g., Goforth v. Astrue*, No. 1:10cv102, 2011 WL 6019956, at *8 (W.D.N.C. Dec. 2, 2011) ("[T]he ALJ properly noted that Plaintiff's credibility was diminished due to possible drug use, as Plaintiff tested positive for marijuana use in August 2006."). The record also supports the conclusion that even when Plaintiff could afford medication, he did not always take it regularly. (Tr. 240 (1/19/2007 "He has been taking Naprosyn inconsistently."), 244 (3/13/2007 "He has been taking occasional Skelaxin, Elavil, and Etodolac. However, I have recommended that he take those on a more regular basis.")

community. (Tr. 17.) Plaintiff contests this finding—as well as various assertions the ALJ made in support of this conclusion, including the ALJ's conclusion that Plaintiff's pack-a-day smoking habit undermined his assertion that he could not afford medication or treatment[11]—and asserts that any failure in the present record to demonstrate his efforts at securing low or no cost medical services is properly attributed to the ALJ. (Docket Entries 11 at 15-16 and 15 at 6-10.) This is because, Plaintiff continues, the ALJ never enquired about these issues at the administrative hearing. (Docket Entry 15 at 9.) The undersigned notes that the issue of Plaintiff's cigarette use and his lack of insurance were discussed during the hearing, albeit not at length.[12] Yet, the undersigned need not definitively resolve this issue, because even assuming the ALJ failed to properly develop the record on the issue of low or no cost medical care, any error committed by the ALJ in his noncompliance analysis is ultimately harmless.[13]

---

[11] The ALJ also pointed to various instances in the record where Plaintiff ran out of medication and missed medical appointments. (Tr. 17.)

[12] At his hearing, Plaintiff indicated that he lost his insurance, but that his sister pays for his medication. (Tr. 311.) In his brief, Plaintiff states that he lost his insurance in early 2007. (Docket Entry 11 at 9.) Plaintiff also stated at his hearing that he smokes half-a-pack of cigarettes a day. (Tr. 310.) The ALJ did not query Plaintiff as to any efforts to secure low or no cost medical services.

[13] *See Funderburk v. Astrue*, No. 2:10–CV–852–CSC, 2012 WL 904682, at *8 (M.D. Ala. Mar.15, 2012) (stating "[b]ecause the record simply was not developed with regard to the availability of free or low-cost medical treatment, the ALJ's conjecture that 'there are community and church services available' is not supported by the record"); *Cf. Fink v. Barnhart*, No. 1:04–CV–266, 2006 WL 5435533, at *6 (W.D.N.C. Apr.18, 2006) (noting the ALJ met his burden of production by his "pointed and exhaustive examination of plaintiff at the hearing" concerning the availability of care from churches and free clinics and plaintiff's assistance therefrom); *but see Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (finding claimant's allegation that he could not afford medication not credible in part because "there [was] no evidence to suggest that he sought any treatment offered to indigents"); *Keokham v. Astrue*, No. CIV S–07–0426 EFB, 2008 WL 4196972, at *7 (E.D.Cal. Sept.9,

"Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Austin v. Astrue*, No. 7:06–cv–622, 2007 WL 3070601, at *6 (W.D.Va. 2007) (citing *Camp v. Massanari*, 22 F. App'x 311 (4th Cir. 2001)).[14] Any errors in the ALJ's noncompliance portion of his credibility analysis are ultimately harmless, given the remainder of the ALJ's credibility analysis. As noted above, the ALJ's conclusion that Plaintiff failed to complain of significant limitations and restrictions to his medical providers beyond those set forth in his RFC is supported by substantial evidence. Nor do the medical opinions on the record support Plaintiff's allegations of disabling pain, given Plaintiff's treating physician opined that he could return

---

2008) (explaining the ALJ's analysis regarding claimant's non-compliance was supported by substantial evidence in part because claimant "provide[d] no documentation of any attempts to receive free or low cost medical assistance during the times in which she claims she could not afford medication").

[14] *See also Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (harmless error where the ALJ erred in pain evaluation because "he would have reached the same result notwithstanding his initial error"); *Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003) (applying harmless error standard to credibility assessment); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (concluding that even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160–61 (9th Cir. 2008) (applying harmless error standard to ALJ's partially flawed credibility analysis); *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (concluding that any errors committed by ALJ in assessing credibility determination of claimant's pain complaints were harmless); *Tomassetti v. Astrue*, No. 7:11–CV–88–D, 2012 WL 4321646, at *11 (E.D.N.C. 22 Aug. 2012) ("[E]ven if plaintiff did take prescribed medications in part for pain, the contrary finding by the ALJ would constitute harmless error and her credibility determination would remain supported by substantial evidence in light of the numerous other factors and large body of medical records and other evidence upon which she based her determination.") *adopted by* 2012 WL 4321632 (E.D.N.C. Sep 20, 2012); *Hosey v. Astrue*, No. 2:11–cv42, 2012 WL 667813, at *7 (W.D.N. C. Feb. 6, 2012) (finding ALJ's reliance on mistaken belief that plaintiff tested positive for THC in his credibility assessment was harmless because ALJ based his credibility finding on other factors as well, including plaintiff's daily activities and medical opinions) *adopted by* 2012 WL 665098 (N.D.W.Va. Feb 28, 2012).

to work. Moreover, the ALJ's conclusion that Plaintiff's back pain was only moderate "with some exacerbations" and that he responded positively to prescribed treatment measures is also supported by substantial evidence. Likewise, the ALJ's conclusion that Plaintiff's activities of daily living were inconsistent with disabling pain, and consistent with his ultimate RFC determination, is also supported by substantial evidence. Any failure on the part of the ALJ to develop the record further here is ultimately harmless as there is no reason to believe that but for the alleged error this case would resolve differently.[15]

## B. The ALJ's RFC Assessment Is Supported by Substantial Evidence.

Plaintiff also asserts that the ALJ's RFC finding is not supported by substantial evidence and that, by extension, his reliance on the VE's testimony at step five was in error. (Docket Entry 11 at 16-17.) As noted, the ALJ grounded his RFC assessment on a treating physician's opinion that Plaintiff could return to work (Tr. 17, 244), the determinations of the State agency consultants that Plaintiff could perform a limited range of work at the medium exertional level (*id.* at 17, 176, 182-189), and the entire record, including a lack of evidence that Plaintiff ever told his doctors that he needed to take frequent breaks during the day to rest. The ALJ properly relied upon this evidence in setting Plaintiff's RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (concluding that the residual capacity assessment is based on

---

[15] *See. e.g., Carson v. Colvin*, Civil No. 1:12–CV–262, 2014 WL 253537, at *10 (W.D.N.C. Jan. 23, 2014) ("Although the ALJ may have erred in his failure to consider Plaintiff's financial inability to obtain treatment in his credibility determination, it is clear that ultimately the error played no role in ALJ's decision. Specifically, the ALJ provides substantial evidence in the record to support his RFC determination apart from financial considerations. The ALJ placed considerable reliance on the Plaintiff's self-reported activities of daily living, work history, and opinion evidence of medical consultants. It is clear to this Court that the ALJ has provided substantial evidence in support of his credibility determination of the Plaintiff in the RFC assessment. As a result, no error of law exists.") (citations omitted).

all the relevant medical and other evidence in the record). Because the ALJ's hypoethetical to the VE matched his RFC findings (Tr. 15, 316) the resulting testimony was substantial evidence in support of the ALJ's step five finding of non-disability.

More specifically, Plaintiff contests that the ALJ failed to take into account his "need to rest periodically during the day due to his pain." (Docket Entry 11 at 17.) This is critical, Plaintiff contends, because at the hearing the ALJ asked the VE to consider a hypothetical individual who "had to take about three half-hour breaks during the workday . . . to lie down due to back problems." (Tr. 317.) The VE replied that such a limitation would eliminate all jobs in the national economy. (*Id.*) Yet, as explained in detail above, the ALJ's credibility analysis is supported by substantial evidence, particularly on this issue, because Plaintiff never contemporaneously reported such a limitation, and no treating or examining physician ever recognized such a need. Consequently, the ALJ was free to disregard the VE's testimony as to this additional limitation. *See e.g., Johnson v. Commissioner of Social Sec.*, 398 F. App'x 727, 735 (3rd Cir. 2010) (concluding that ALJ's failure to explain why he did not consider VE's answer to second hypothetical question, which included work restriction of frequent breaks, did not render his finding deficient because it was obvious the answer was immaterial once the ALJ made RFC determination, which did not include need for frequent breaks); *Boynton v. Apfel*, No. 98-1987, 1999 WL 38091, *4 (7th Cir. Jan. 7, 1999) (unpublished) (concluding that ALJ did not need to explicitly address second hypothetical because his findings implicitly rejected the basis for that question).

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 10) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
February 20, 2014